### TSELENTIS v. MICHALINOS MARI-TIME & COMMERCIAL CO., Ltd.

### The LEONIDAS MICHALOS.

United States District Court
Southern District of New York.
May 16, 1952.

Lebovici & Safir, New York City (Herbert Lebovici, New York City, of counsel), for libelant.

Kirlin, Campbell & Keating, New York City (William P. Larsen, Jr., Louis Gus-mano, New York City, of counsel), for respondents.

IRVING R. KAUFMAN, District Judge.

Respondents move this court for a decree dismissing the libel on the ground that the court does not have jurisdiction of the subject matter of the suit, or, in the alternative, to decline to take jurisdiction on the ground that it is not a proper forum.

The action contains three causes: First, to recover for negligence based upon the Jones Act, 46 U.S.C.A. § 688, and the general maritime law; second, to recover for unpaid wages; third, to recover penalties for the non-payment of those wages under 46 U.S.C.A. §§ 596 and 597.

Respondent corporation is a foreign corporation organized under and by virtue of the laws of Greece with offices in Greece. Libelant is a citizen of Greece who has been deported by the United States to Greece.

In fuller detail, the libel alleges in the first cause of action, that on or about the 4th day of December, 1951, at the port of Newport News, Virginia, libelant, having served aboard the respondent-owned S. S. "Leonidas Michalos" on previous engagements was re-engaged to serve as a seaman for a voyage of the vessel thereabout to be commenced and to be paid regular monthly wages and found.

It also alleges that by reason of the negligence of respondents and the unseaworthiness of the vessel, libelant was violently assaulted by the master of the vessel and that libelant is electing to maintain this action pursuant to the provisions of the Jones Act and the general maritime law.

The second cause of action, in addition to realleging the paragraphs of the first cause of action, asserts that on January 19, 1952, libelant was discharged from the S. S. "Leonidas Michalos" at the port of Jacksonville, Florida, and at the time of the discharge he was paid no part of the monies due him for previous service aboard the vessel. It is alleged that he still remains unpaid for his previous services.

The third cause of action realleges the paragraphs of the first cause of action and

asserts that by virtue of the provisions of 46 U.S.C.A. §§ 596 and 597 libelant is entitled to recover two days pay for each day the wages earned and due him at the port of Jacksonville continued to be withheld from him.

Upon this motion to dismiss, respondents put in question those allegations of the libel which would confer jurisdiction on this court, and assert affirmatively in an affidavit by their proctor that libelant was signed on at Rotterdam, Holland, in 1950, and has served with the vessel continuously until he was removed at Jacksonville, Florida, on or about January 12, 1952, due to a mental attack. Respondents attempt to fortify this assertion by an affidavit of the master of the vessel (whose alleged wrongful act caused the injury) who avers that libelant was not reengaged at any time while the vessel was in a port of the United States to serve as a seaman but continued in the service under and by virtue of his engagement entered into in Rotterdam, Holland, in 1950. Respondents' proctor further asserts, upon information and belief, that it is the practice on vessels of Greek registry that seamen have a continuous engagement of hire and not a voyage-to-voyage hiring as is the practice on vessels of United States registry, and that in view of the fact that libelant was not engaged in the United States, this court does not have jurisdiction.

Moreover, respondents' proctor urges that even if the court should find that it does have "technical jurisdiction", it should decline to take jurisdiction of the case since it is between non-resident aliens. An affidavit by a Greek attorney, allegedly expert in Greek law, is offered to establish that libelant will not be prejudiced by a declination of jurisdiction since he has an adequate remedy under the laws of Greece.

On the other hand, libelant's proctor asserts in his brief that Greek law does not require articles be signed, and many Greek vessels do not use articles in connection with the employment of their seamen. He states further that the employment of the seamen is usually co-terminous with the voyage made by the vessel and on the termination of a voyage the seaman

is paid. He may either leave the vessel, or he may be engaged anew for another voyage of the vessel. If he is reengaged for a new voyage, there is no signing of new articles or new registration. The seaman merely comes aboard for the voyage.

So far as it concerns the first cause of action, the determination of this motion depends upon the allegation in the libel that libelant was reengaged on December 4, 1951 at Newport News, Virginia. This allegation is incorporated by reference in the second and third causes of action as are other jurisdictional allegations in those causes.

■ ■ Respondents urge that if libelant, a Greek national, signed on at Rotterdam, Holland, on a Greek owned, operated and registered ship, he cannot avail himself of the Jones Act merely because the ship may be partial to American ports. This is good law and I accept it as such. The Paula, 2 Cir., 1937, 91 F.2d 1001, certiorari denied Peters v. Lauritzen, 1937, 302 U.S. 750, 58 S.Ct. 270, 82 L.Ed. 580; Jonassen v. U. S. A. and Norwegian-American Lines, D.C.E.D.N.Y., 1952, 103 F.Supp. 862; O'Neill v. Cunard White Star Line, Ltd., 2 Cir., 1947, 160 F.2d 446, certiorari denied, 1947, 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358; Taylor v. Atlantic Maritime Co., 2 Cir., 1950, 179 F.2d 597, certiorari denied, Atlantic Maritime Co. v. Rankin, 1951, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1350; Catherall v. Cunard S. S. Co., D.C. S.D.N.Y., 1951, 101 F.Supp 230.

■ While it is true that the benefits of the Jones Act have not been extended to foreign seamen signing on in foreign ports on foreign owned, operated, registered ships simply because those ships are partial to American ports, the benefits of the Act have been extended to foreign seamen signing on such ships in American ports. Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132; Taylor v. Atlantic Maritime Company, supra.

Respondents urge that the allegation in the libel that libelant was signed on at an American port is not conclusive because it was not verified by libelant. To this the proctor for libelant replies in his brief that

the instant notice of motion gave no indication that the verification was to be questioned in any respect. Furthermore, he says, he was retained by two relatives of libelant, and in view of the mental condition of libelant, he did not use libelant's verification although he had obtained such.

■ We are therefore faced with a cleavage of factual contentions: on one hand respondents assert that libelant was never engaged at Newport News, Virginia, and, on the other, libelant, with equal fervor, avers that he was so engaged. This is clearly the kind of a case where the determination of the applicable legal principle of jurisdiction is dependent upon the resolution of issues of fact, of which this is but one. The ultimate determination will depend upon whether libelant carries his burden of sustaining jurisdiction. Gibbs v. Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Kvos, Inc. v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. This cannot be determined upon mere vehemence of the assertions in the papers submitted on the instant application. It can properly be determined only by affording the trial court an opportunity to hear and observe the witnesses, or, if this is impossible, by the submission of either oral depositions or written interrogatories, and in either instance the right of cross-examination will be afforded the parties.

■ The application addressed to the court's discretion hinges, in the main, upon the determination of the question of jurisdiction based on the Jones Act. If the claim based on the Jones Act falls, the claim grounded on the general maritime law should be declined in the discretion of the court.

■ In this action, libelant and the corporate respondent are Greek. Respondents assert that there is an adequate remedy for libelant's injuries and damages under the law of Greece. Standing alone, it would appear that if this motion were addressed solely to the court's discretion, jurisdiction of the case in so far as the libel has stated a claim under the general maritime law should properly be declined. However, I have already stated that a determination of this phase of the application depends largely upon the resolution of the Jones Act claim. It thus appears that another essential side of this application can not be disposed of until the factual issue is settled. If that resolution is to libelant's advantage then the court may take jurisdiction, not only of the Jones Act aspect of the case, but of the general maritime law aspect as well, for it has been held that the court, having taken jurisdiction of a mandatory cause of action, should also in the interest of seeing full justice done, retain jurisdiction of the discretionary claim. Heros v. Cockinos, 4 Cir., 1949, 177 F.2d 570; see also Stavridis v. Cia Panamena Europa Nav., D.C.S.D. N.Y., 1950, 90 F.Supp. 187, 1951 A.M.C. 345, 346.

■ Furthermore, the second and third causes of action allege claims for wages under the laws of the United States. Here, likewise, a determination of the legal jurisdictional principles depends upon the resolution of the factual issues—the situs of engagement and discharge. The witnesses should be seen and heard or depositions or interrogatories submitted on issues so vital. While the decisions in the cases of The Prince Pavle, D.C.E.D.N.Y., 32 F. Supp. 5, and The Halcyon, D.C.E.D.N.Y. 1940, 32 F.Supp. 8 establish that the court may in its discretion decline jurisdiction for a statutory wage claim where the suit is between foreigners and there was no engagement in the United States, the Court of Appeals for the fourth circuit in Lakos v. Saliaris, 1940, 116 F.2d 440 at page 441; held per Parker, J.:

"It is well settled that the protection of this statute [46 U.S.C.A. § 597] extends to foreign seamen on a foreign vessel within a port of the United States and that it secures to them the payment of their wages upon the completion of the voyage ending in such port. (Cases cited.)"

As to the reasons for this doctrine, the Lakos case observes, 116 F.2d at page 444:

"After pointing out that the protection of American seamen demands that these provisions of the law be

enforced with respect to foreign seamen as well, since otherwise foreign seamen would have an advantage in obtaining employment, the court in Strathearn S. S. Co. v. Dillon, supra, went on to say, 252 U.S. [348 at] page 355, 40 S.Ct. [350 at] page 352, 64 L.Ed. 607, 'But, taking the provisions of the act as the same are written, we think it plain that it manifests the purpose of Congress to place American and foreign seamen on an equality of right in so far as the privileges of this section are concerned, with equal opportunity to resort to the courts of the United States for the enforcement of the act.' Foreign seamen would manifestly not be placed on an equality of right with American seamen 'with equal opportunity to resort to the courts of the United States for the enforcement of the act', if the courts were at liberty in their discretion to decline jurisdiction of such suits instituted by foreign seamen. And to this we may add that, in the language of Chief Justice Marshall, 'We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257."

It is apparent, therefore, that the ultimate determination of the soundness of the second and third causes of action will require the resolution of the issues of fact already alluded to and, in turn, the discretionary claim in the first cause of action under the "general maritime law" may also hinge upon this determination.

The motion of the respondents cannot be granted at this juncture of the case. I am especially persuaded to so rule in the light of the language of Judge Knox in Ververis v. Marathon Steamship Co., Ltd. and the S. S. Ameriki, 1952 A.M.C. 147 (D.C.S.D.N.Y.1951) where he said at 148:

"It appears to be the custom on Greek ships for the men to be engaged without actually 'signing on'. Each trip, it appears, involves a new engagement. The libel, at least, so states,

and on such allegation I hold that the court is vested with jurisdiction."

The motion will be denied with leave to renew at the trial, or, it may be renewed sooner in the regular Motion Part if depositions or interrogatories are available to assist the Judge in determining the credibility of the witnesses on the vital issues of fact.

Settle order.